In re TILLY REALTY ASSOCIATES, Debtor.

Rhode Island Hospital Trust National Bank, in its capacity as trustee under the will of Fred N. Strasmich, Plaintiff,

v.

Edward D. Pare, Jr., Rhode Island Depositors Economic Protection Corporation, and Erwin E. Strasmich, Defendants.

Bankruptcy No. 96–13776.
Adversary No. 97–1146.

United States Bankruptcy Court,
D. Rhode Island.

Feb. 8, 1999.

Robert D. Wieck, MacAdams & Wieck Inc., Providence, Rhode Island, for plaintiff.

Thomas S. Hemmendinger, Benjamin M. Scungio, Brennan, Recupero, Cascione, Scungio & McAllister, Providence, Rhode Island, for defendant Rhode Island Depositors Economic Protection Corporation.

Keven A. McKenna, McKenna Law Offices, Providence, Rhode Island, for defendant Erwin Strasmich.

## DECISION

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the complaint of Rhode Island Hospital Trust National Bank (RIHT), in its

capacity as trustee of the Fred N. Strasmich Trust and as a general partner of Tilly Realty Associates. RIHT seeks a declaratory judgment that a real estate attachment placed by the Receiver for Marquette Credit Union ("Receiver"), and Rhode Island Depositors Economic Protection Corporation ("DEPCO"), did not create a valid lien on the property owned by the debtor, Tilly Realty Associates. This matter was combined for trial with the Debtor's objection to DEPCO's Claim # 16, wherein it is alleged that DEPCO is not a creditor of the Debtor.

For the reasons given below we conclude: (1) that the Receiver/DEPCO's attachment does not constitute a valid lien on property of Tilly Realty Associates; (2) that the Receiver and DEPCO do have a valid lien against Erwin Strasmich's *interest* in the partnership property; and (3) because DEPCO is not a creditor of Tilly Realty Associates, DEPCO's Claim # 16 is DISALLOWED.

## UNCONTESTED FACTS AND BACKGROUND

In 1979 Fred N. Strasmich ("Fred") created a trust wherein he and Rhode Island Hospital Trust National Bank (RIHT) were co-trustees. About six years later Fred died, and Richard A. Licht, Esq. succeeded Fred as co-trustee. At that time the trust estate included 50% of the outstanding capital stock of Tilly Realty Corporation (TRC). The other half of TRC's capital stock was owned by Fred's brother, Erwin E. Strasmich ("Erwin"). TRC's assets include the real estate at issue in this case which is located in Fall River, Massachusetts, and consists of three commercial buildings: the "King Philip Complex," the "Howard Arthur Complex," and the "Martine Street Complex" (the "Mill Properties"). Since Fred's death in 1985, Erwin has managed the property.

In February 1986, the co-trustees and Erwin decided to terminate the partnership.

After a liquidation plan was adopted by the TRC board of directors, a deed was drafted by Richard Levin (Levin), TRC's corporate counsel, whereby undivided one-half interests in the Mill Properties were transferred jointly to the co-trustees and to Erwin. This deed was executed and recorded with the Registry of Deeds for Bristol County, Fall River District on December 29, 1986. At the same time, Erwin and the co-trustees formed a new entity—Tilly Realty Associates, a general partnership. On December 30, 1986, TRC executed an assignment of all TRC property to Tilly Realty Associates (TRA), but this assignment was not recorded. Likewise, TRA did not execute or record any written partnership agreement or business certificate until April 10, 1995, when Levin, acting as Erwin's personal attorney, recorded with the Fall River City Clerk a business certificate which declared that Erwin and the co-trustees, RIHT and Licht, were doing business as Tilly Realty Associates. This certificate was not recorded. Since 1986, Erwin has managed the Mill Properties as a general partner of Tilly Realty Associates, and has received substantial management fees. See Plaintiff's Ex. # 5.[1]

On September 28, 1990, in an unrelated transaction, yet lying at the heart of this dispute, Marquette Credit Union loaned $325,000 to Erwin Strasmich and a business associate, Raymond F. Fay. In the course of applying for this loan and in his subsequent dealings with Marquette and its successor, DEPCO, Erwin submitted a Personal Financial Statement, an Affidavit of Financial Condition, and a copy of his 1988 Federal Income Tax Return.[2] See Defendants' Ex. G; Plaintiff's Exs. ## 4, 5. The loan was secured by a first mortgage on real estate located in Providence, Rhode Island, owned jointly by Erwin and Fay, both of whom subsequently defaulted on the note. DEPCO foreclosed the mortgage on the Providence property in

---

1. Sometime in 1993, Levin (again in behalf of Erwin, personally) drafted and attempted to record a deed indicating that the Mill Properties were owned by TRA as partnership property. Because of an injunction obtained in a separate proceeding brought by Amitie Bellini and recorded with the Fall River Registry of Deeds, the new deed was not recorded.

2. The record clearly establishes that each of these documents was in DEPCO's files before August 4, 1995, the date of DEPCO's attachment. Moreover we have ruled previously in connection with the imposition of discovery sanctions against DEPCO in this proceeding, that Erwin's Affidavit of Financial Condition (Plaintiff's Ex. # 4) was in DEPCO's files since December 1994.

1994, and was left with a large deficiency. On July 31, 1995, DEPCO sued Erwin in the Rhode Island Superior Court to collect the deficiency balance.

It is clear that DEPCO had in its possession several documents revealing that TRA owned the Mill Properties and that Erwin's primary source of income was management fees from TRA. Nevertheless, DEPCO filed an ancillary proceeding in the Massachusetts Superior Court to attach Erwin's *"record interest"* in the Mill Properties, and obtained an *ex parte* writ of attachment which was recorded with the Registry of Deeds on August 3, 1995. When the attachment was recorded, record title to the Mill Properties stood in the names of Erwin (undivided one-half interest), and the co-trustees, RIHT and Licht (undivided one-half interest). See Defendants' Ex. A. Erwin moved to dissolve the attachment, and on August 17, 1995, the Massachusetts Court held a hearing on the Motion to Dissolve. Although RIHT was present at this hearing it did not participate or file any pleadings, nor did RIHT advise DEPCO or the Court that the Mill Properties were owned by TRA and were partner-

ship property. The Motion to Dissolve was denied, and no appeal was taken from that order.

On November 19, 1996, RIHT filed an involuntary Chapter 11 petition against TRA, seeking to terminate the partnership and to insulate itself from Erwin's alleged mismanagement[3] and high fees. After opposition and hearings, the Order for Relief was entered on February 24, 1997.

RIHT contends that as a creditor of the partnership its claims against the Mill Properties are superior to the claims of DEPCO—a creditor of Erwin Strasmich, individually. RIHT argues that pursuant to Section 25 of the Massachusetts Partnership Act,[4] the Mill Properties, as specific partnership property, are subject to attachment only by creditors of the partnership, and that because DEPCO's claim is against Erwin individually, and not against TRA, the attachment is invalid. M.G.L. ch. 108A § 25. Alternatively, RIHT argues that under Section 10 of the Massachusetts Partnership Act,[5] since DEPCO had actual knowledge that the Mill Properties were

---

3. RIHT contends that Erwin failed to prepare and follow through with a sales program for the Mill Properties, and that he generally did not provide RIHT with timely financial information. These allegations of mismanagement are fully supported by the record, and they are incorporated herein as findings of fact. See Jeremy Weir's Test., June 30, 1998.

4. This section states in part:
   25. Ownership of specific partnership property; tenancy in partnership; incidents of tenancy
   (1) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.
   (2) The incidents of this tenancy are such that:
   . . .
   (c) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership.
   M.G.L. ch. 108A § 25.

5. This section states:
   10. Conveyance to title to realty
   (1) Where title to real property is in the partnership name, any partner may convey title to such property by a conveyance executed in the partnership name; but the partnership may recover such property unless the partner's act binds the partnership under the provisions of paragraph (1) of section

nine, or unless such property has been conveyed by the grantee or a person claiming through such grantee to a holder for value without knowledge that the partner, in making the conveyance, has exceeded his authority.
(2) Where title to real property is in the name of the partnership, a conveyance executed by a partner, in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of paragraph (1) of section nine.
(3) Where title to real property is in the name of one or more but not all the partners, and the record does not disclose the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property if the partners' act does not bind the partnership under the provisions of paragraph (1) of section nine, unless the purchaser or his assignee is a holder for value, without knowledge.
(4) Where the title to real property is in the name of one or more of all the partners, or in a third person in trust for the partnership, a conveyance executed by a partner in the partnership name, or in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of paragraph (1) of section nine.

partnership property, it (DEPCO) is not a bona fide purchaser for value, and that therefore, any lien it has is subordinate to the liens of partnership creditors. M.G.L. ch. 108A § 10.

DEPCO argues that (1) the record does not disclose that the property was partnership property, or (2) that the property was owned by Tilly Realty Associates. DEPCO also denies that it had actual notice of the partnership interest in the property, and that as an attaching creditor without notice it is a bona fide purchaser for value,[6] and that its attachment constitutes a valid lien on the property that is superior to all others, except priority tax liens. *See* M.G.L. ch. 183 § 4; *Clark v. Kahn (In re Dlott)*, 43 B.R. 789, 793 (Bankr.D.Mass.1983), *citing, General Builders Supply Co. v. Arlington Coop. Bank*, 359 Mass. 691, 271 N.E.2d 342, 345 (1971). DEPCO also raises the affirmative defenses of waiver, estoppel, and laches, based on RIHT's failure to inform DEPCO of its partnership interest in the Mill Properties, and its failure to object to or appeal the issuance of the writ of attachment by the Massachusetts Superior Court.

### DISCUSSION

■ We agree with and adopt RIHT's argument that Section 25 of the Massachusetts Partnership Act[7] is dispositive in this case. *See* M.G.L. ch. 108A § 25, which provides that "[a] partner is co-owner with his partners of specific partnership property holding as a tenant in partnership" and that "[t]he incidents of this tenancy are such that

> (5) Where the title to real property is in the names of all the partners a conveyance executed by all the partners passes all their rights in such property.
> M.G.L. Ch. 108A § 10.

6. Section 4 of the Recording Act states:

> 4. Effect of recordation or actual notice of deeds or leases, or of assignments of rents or profits
> A conveyance of an estate . . . shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it, or an office copy as provided in section thirteen of chapter thirty-six, or, with respect to such a lease or an assignment of rents or profits, a notice of lease or a notice of assignment of rents or profits, as hereinafter defined, is recorded in the registry of deeds for the

. . . [a] partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership." M.G.L. ch. 108A § 25(1), (2)(c). The Mill Properties unquestionably are specific partnership property owned by TRA[8] and, as such, are not subject to attachment by creditors of individual partners. Therefore, DEPCO's attachment may extend no further than to Erwin's *interest* in TRA and/or its property. Accordingly DEPCO's attachment, which is valid only as to Erwin's partnership interest, comes behind the claims of partnership creditors, including RIHT. *See* M.G.L. ch. 108A § 25(1), (2)(c).

■ In addition, even if Section 25, alone, did not resolve this dispute, we agree with and adopt RIHT's second argument that under Section 10 of the Partnership Act, DEPCO had timely, actual knowledge of TRA's partnership interest in the Mill Properties, defeating its bona fide purchaser arguments. *See* M.G.L. ch. 108A § 10, which provides that

> Where the record does not disclose the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property if the partners' act does not bind the partnership under the provisions of paragraph (1) of section nine, unless the purchaser or his assignee is a holder for value, without knowledge.

*See* M.G.L. ch. 108A § 10(3).

The record conclusively answers in the affirmative the question whether DEPCO

> county or district in which the land to which it relates lies.
> M.G.L. Ch. 183 § 4.

7. Because this case concerns the recordation and ownership of real estate located in Massachusetts, we must apply Massachusetts law to determine the validity and priority of the various liens. *See, e.g., Nobelman v. American Sav. Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (*citing, Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

8. On February 24, 1997, at the conclusion of the hearing on TRA's opposition to the involuntary petition, our unappealed ruling that the Mill Properties were partnership property became the law of the case.

had knowledge, within the meaning of the Partnership Act, that TRA was the owner of the Mill Properties. Under the Partnership Act, a person has notice when "he has actual knowledge ... [or] when he has knowledge of such other facts as in the circumstances show bad faith." M.G.L. ch. 108A § 3(1). Several documents in evidence show that DEPCO had actual knowledge of TRA's partnership interest in the Mill Properties. First, prior to placing the attachment on the Mill Properties, DEPCO had in its possession Erwin's 1988 Federal Tax Return. This document not only disclosed that Erwin was a general partner of TRA, but also that he had received over $126,000 in management fees in connection with TRA.[9] See Plaintiff's Ex. # 5. Second, before requesting the attachment, DEPCO had in its possession Erwin's Affidavit of Financial Condition. See Plaintiff's Ex. # 4. This document discloses that Erwin had received $125,000 from TRA; that he managed TRA's tenants; that he owned a 50% interest in TRA; and that he owned only a partial interest in the Mill Properties by virtue of his partnership status in TRA. See id., at pp. 000082, 000084, 000086, 000087. Third, DEPCO's verified complaint in the Massachusetts action is very telling, and is in fact conclusive regarding what DEPCO actually knew about TRA's interest in the Mill Properties. See Plaintiff's Ex. # 1. In paragraph 4 of the Complaint DEPCO alleged that Erwin was a general partner of TRA and that TRA owned and/or managed the property commonly known as the Mill Properties. See id., at p. 3. DEPCO also alleged that Erwin's "partnership interest" in the property "may be reached and applied in payment of his indebtedness." See id., at p. 4.

Based upon its own allegations in the sworn complaint, the conclusion is inescapable that DEPCO had actual knowledge of TRA's partnership interest in the Mill Properties. Because of this, DEPCO is precluded from asserting that its claim be accorded the elevated status of a bona fide purchaser for value. Such classification is reserved for the innocent purchaser (and sometimes a creditor) who has acted in good faith and without knowledge of a prior impediment. See, e.g., New England Merchants Nat'l Bank v. Old Colony Trust Co., 356 Mass. 612, 254 N.E.2d 891 n. 3 (1970). In the circumstances, there is no way that DEPCO may be considered an innocent purchaser for value (or an equivalent status which is sometimes afforded attaching creditors).[10] See, e.g., Dlott, 43 B.R. at 793, General Builders, 271 N.E.2d at 345.

DEPCO's arguments concerning waiver and estoppel also are unpersuasive. These contentions are premised on the assumption that RIHT had an affirmative obligation in the attachment litigation to state its position that the Mill Properties were partnership property. While RIHT's silence is puzzling, this does not create an estoppel or waiver of its claim. Through the Massachusetts action DEPCO and the Receiver sought to attach whatever right, title and interest Erwin had in the Mill Properties. Also, it is clear that DEPCO already had knowledge that the properties were owned by a partnership doing business in Massachusetts, and never sought a determination as to the nature of Erwin's interest in these properties. Furthermore, assuming arguendo only,[11] that DEPCO did rely on RIHT's silence at the hearing on its Motion for Writ of Attachment, it has shown no resulting damage or prejudice.[12]

For all of the foregoing reasons, we conclude that: (1) DEPCO and the Receiver do not have a valid, perfected lien on the partnership property of Tilly Realty Associates; (2) DEPCO does have a valid lien against

9. Although there was testimony suggesting that DEPCO did not have access to Erwin's 1988 tax return, it is clear from other documents in its possession that DEPCO did have the 1988 tax return, and that it in fact had examined the document. See Laurie Greenwood's Test. June 29, 1998; Plaintiff's Ex. H.

10. While it has not been introduced as an issue, DEPCO's bona fide purchaser assertions could easily be considered sanctionable. See Fed. R.Bankr.P. 9011.

11. In fact, we specifically find to the contrary.

12. Indeed when Paul Samson, DEPCO's attorney in the state court proceeding, testified as to how DEPCO was damaged, he merely stated that "he would have done things differently." There was no further elaboration.

Erwin Strasmich's *interest* in the partnership property; and (3) because DEPCO is not a creditor of this estate, DEPCO's Proof of Claim # 16 is DISALLOWED.

Enter Judgment consistent with this opinion.